**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**


**CLARA DIAZ**,

       Plaintiff,

   vs.                      No. **CIV 00-861 MCA/WWD**

**ALBUQUERQUE, NEW MEXICO POLICE
DEPARTMENT,** and  **APD OFFICERS RAY
BACA, DON McGRATH, D. PACHECO,
PAUL FEIST,** and **LIEL ARVICKSON,
INDIVIDUALS PERFORMING
UNAUTHORIZED ACTS WHILE ON
OFFICIAL DUTY,** and **OTHERS YET
UNNAMED**, all individually, jointly, and
severally,

       Defendants.


**MEMORANDUM OPINION AND ORDER**


    **THIS MATTER** comes before the Court on Defendants' Motion for Summary

Judgment Under the Doctrine of Qualified Immunity [Doc. No. 58] filed on April 2, 2002,

and the Court's *sua sponte* inquiry under Fed. R. Civ. P. 12(b)(6). Having reviewed the

pleadings, memoranda, and exhibits of record, the relevant law, and otherwise being fully

advised in the premises, the Court concludes that the individual Defendants are entitled to

qualified immunity with respect to all of Plaintiff's claims arising under 42 U.S.C. §§ 1983,

1985, and 1986, and that Plaintiff's Complaint fails to state any other claims for which relief

may be granted.  Therefore, Defendants' motion is granted and all of Plaintiff's claims are dismissed with prejudice.

## I.    <u>BACKGROUND</u>

This case is one of a series of civil actions brought by members of the Diaz family arising from a fight at a trailer park on Central Avenue in Albuquerque, New Mexico, that occurred on the evening of June 18, 1997.  An individual named Isabel Ledezma received a nonfatal gunshot wound to the head during that fight.  After the shooting, officers of the Albuquerque Police Department (APD) searched Plaintiff's trailer home and arrested three of her children, Carlos Diaz, Gilbert Diaz, and Myrna Diaz.  Criminal charges against Carlos Diaz and Myrna Diaz were filed in the Second Judicial District Court of the State of New Mexico.  They eventually were acquitted on those charges.  <u>See</u> <u>State v. Diaz</u>, Nos. CR-00-1616 and CR-00-1615 (N.M. 2d Jud. Dist. Ct. July 11, 2001) (order dismissing criminal indictments with prejudice).  (Ex. 9 to Pl.'s Resp.)

Carlos Diaz and Myrna Diaz filed civil actions against their former criminal defense attorneys, <u>see</u> <u>Diaz v. Paul J. Kennedy Law Firm</u>, 289 F.3d 671 (10th Cir. 2002), the shooting victim and his family, <u>see</u> <u>Diaz v. Ledezma</u>, Civ. No. 00-801 MCA/RLP (D.N.M. Aug. 28, 2002) (memorandum opinion and order denying motions for default judgment), and the judge, district attorneys, and APD officers allegedly involved in the investigation and prosecution of the criminal charges, <u>see</u> <u>Diaz v. Second Jud. Dist. Ct.</u>, Civ. Nos. 00-577, 00-700, 00-783 JC/RLP (consolidated) (D.N.M. Aug. 27, 2002 & Nov. 27, 2001) (memorandum opinions and orders granting APD officers' motion for summary judgment and judicial

defendants' motion to dismiss third amended complaint).  In addition, Gilbert Diaz filed a civil action against the APD officers allegedly involved in the investigation which led to his *de facto* arrest.  See Diaz v. Albuquerque, N.M. Police Dep't, Civ. No. 00-862 JP/WWD (D.N.M. July 18, 2002) (memorandum opinion and order granting defendants' motion for summary judgment).

In the present case, Plaintiff challenges the search of her trailer home and her treatment by APD officers during the investigation of the shooting.  For the purpose of analyzing Defendants' summary-judgment motion, the evidence submitted with the parties' briefs can be summarized in the light most favorable to Plaintiff as follows.

On the evening of June 18, 1997, Plaintiff and some members of her family were residing in Trailer Number 27 at a trailer park on Central Avenue in Albuquerque, New Mexico.  Plaintiff, as well as her son, Carlos Diaz, and her daughter, Myrna Diaz, were involved in a fight at the trailer park that evening.  During the fight, Plaintiff heard a bang and then saw Carlos Diaz running away.  (Clara Diaz Dep. at 38-41.)  Isabel Ledezma was shot in the head during that fight.  (Ex. 19, 20, 21 to Pl.'s Resp.)

Plaintiff was punched in the stomach and knocked to the ground during the fight. Although she had to be helped up, Plaintiff was able to walk back to her trailer home after the fight, and she had no visible signs of injury such as bleeding. (Clara Diaz Dep. at 23-25, 41.)  Carlos Diaz also retreated to Plaintiff's trailer home after the shooting.  He fled the scene through the rear door of the trailer home before police arrived.  (Pl.'s Resp. at 2.)

Officers from the Albuquerque Police Department (APD), as well as an ambulance, were dispatched to the scene of the shooting, where they found Mr. Ledezma bleeding from the gunshot wound to his head. The ambulance transported the shooting victim, Mr. Ledezma, to the University of New Mexico Hospital (UNMH). The APD officers remained at the scene and interviewed witnesses. According to the officers' reports, some witnesses informed them that Myrna Diaz had retrieved the handgun used in the shooting from Trailer Number 27 and handed it to Carlos Diaz. APD officers came to Plaintiff's trailer home, took statements from her and the remaining members of her family about the incident, obtained the signature of Myrna Diaz on a "Permission to Search" form, and looked for Carlos Diaz. (Ex. 8, 19, 20, 21 to Pl.'s Resp.)

Plaintiff describes her encounter with the APD officers as a "house arrest" in which the officers screamed, pointed their weapons at her granddaughters, and threatened to "bring the SWAT Team and destroy the house, and . . . put everybody in jail." Plaintiff also claims that she was in pain and requested medical attention while the APD officers were present, but that the APD officers refused her request and would not let her use the telephone or leave her chair. Plaintiff did not seek any medical care that evening after the APD officers left. (Clara Diaz Dep. at 48-51, 25-29.)

Carlos Diaz returned to Plaintiff's trailer home with his brother, Gilbert Diaz, after the APD officers left. Between 11 a.m. and noon the next day, June 19, 1997, Carlos Diaz and Gilbert Diaz left Plaintiff's trailer home in a grey van. They were stopped and arrested while traveling eastbound on Central Avenue approximately one minute after leaving the

trailer home. (Gilbert Diaz Dep. at 63-69; Ex. 5 to Pl.'s Resp.) Carlos Diaz subsequently was advised of his constitutional rights and gave a statement in which he informed APD officers that the handgun used in the shooting was hidden in the trailer home inside his sister's bedroom. (McGrath Dep. at 174-75.)

After obtaining this information from Carlos Diaz, APD officers returned to Plaintiff's trailer home and proceeded to search for the handgun used in the shooting or anything associated with that handgun. They recovered a speed loader and a holster, but did not find the handgun. (McGrath Dep. at 160-62.) The trailer home was unoccupied at the time of the search on that date. Gilbert Diaz was released from police custody and allowed to return to Plaintiff's trailer home immediately following the search. According to his deposition testimony, Plaintiff's trailer home "was broken into" and "[p]retty well raided" at that time. He also stated that "[t]hey sure went through the whole house," and that "[t]hings were turned up, et cetera, et cetera." (Gilbert Diaz Dep. at 91, 94.)

Plaintiff never returned to the trailer home except "to pick up clothes and things" on a few occasions between June 20, 1997, and June 30, 1997. (Clara Diaz Dep. at 38-39.) On those occasions, she observed that the door to the trailer home was "broken," but she made no attempt to repair it as it still closed. (Clara Diaz Dep. at 44-45.)

Plaintiff believes that the shooting victim and his family are part of a street gang, and she fears retaliation from this gang. Based on such fears, a member of the Diaz family called "Crimestoppers" to report a threat the day after the shooting (Clara Diaz Dep. at 34-38), and

Plaintiff moved away from the trailer park.  (Clara Diaz Dep. at 46.)  A year or so after the

shooting, she also made three or four calls to the APD Gang Unit. (Clara Diaz Dep. at 47).

## II.    ANALYSIS

### A.    Standard of Review

#### 1.    Summary Judgment Under Fed. R. Civ. P. 56

Under Fed. R. Civ. P. 56(c), the Court may enter summary judgment when the

motion papers, affidavits, and other evidence submitted by the parties show that no genuine

issue exists as to any material fact and that the moving party is entitled to judgment as a

matter of law.  A "genuine issue" exists where the evidence before the Court is of such a

nature that a reasonable jury could return a verdict in favor of the non-moving party as to that

issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).  A fact is

"material" if it might affect the outcome of the case.  See id. at 248.  Judgment is appropriate

"as a matter of law" if the nonmoving party has failed to make an adequate showing on an

essential element of its case, as to which it has the burden of proof at trial.  See Celotex

Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In order to warrant consideration by the Court, the factual materials accompanying

a motion for summary judgment must be admissible or usable at trial (although they do not

necessarily need to be presented in a form admissible at trial).  See id. at 324.  It is not the

Court's role, however, to weigh the evidence, assess the credibility of witnesses, or make

factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the

evidence of the non-moving party to be true, resolves all doubts against the moving party,

construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

When a defendant raises the affirmative defense of qualified immunity in a summary-judgment motion, the burden shifts to the plaintiff to establish that the defendant's actions violated a constitutional or statutory right and that the right at issue was clearly established at the time of the defendant's unlawful conduct. See Gross v. Pirtle, 245 F.3d 1151, 1155-56 (10th Cir. 2001). If the plaintiff fails to meet this burden, then the Court must grant the defendant qualified immunity. See id. at 1156. If the plaintiff does establish the violation of a clearly established constitutional or statutory right, then (for purposes of the defendant's summary-judgment motion) the burden shifts to the defendant to prove that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. See id.

### 2. *Sua Sponte* Dismissal Under Fed. R. Civ. P. 12(b)(6)

The Court may *sua sponte* dismiss a complaint under Fed. R. Civ. P. 12(b)(6) when it is patently obvious that the plaintiff cannot prevail on the facts alleged and allowing an opportunity to amend would be futile. See Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir.1991). Further, the Tenth Circuit has expressly adopted "the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts." Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir.), cert. denied, 122 S.Ct. 274 (2001). Nonetheless, a "district

court should allow a plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim." Id.

### B. **Plaintiffs Claims Under 42 U.S.C. §§ 1983, 1985, 1986, and 1988**

Plaintiff's Complaint seeks damages and attorney fees pursuant to 42 U.S.C. § 1983, 1984, 1985, 1986, and 1988, to redress alleged violations of the Fourth, Fifth, Thirteenth, and Fourteenth Amendments. Section 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. 42 U.S.C. § 1984 is nonexistent. 42 U.S.C. §§ 1985 and 1986 address conspiracies to violate civil rights, and 42U.S.C. § 1988 provides for the award of attorney fees to parties that prevail in litigation under the preceding sections.

Persons sued in their individual capacity under these civil-rights statutes generally are entitled to qualified immunity unless it is shown that their actions violated a specific statutory or constitutional right and that the rights which they allegedly violated were clearly established at the time of the conduct at issue. See Oliver v. Woods, 209 F.3d 1179, 1185 (10th Cir. 2000) (discussing qualified immunity under Section 1983); Bisbee v. Bey, 39 F.3d 1096, 1102 (10th Cir. 1994) (extending qualified immunity to actions under Section 1985); cf. Brown v. Chaffee, 612 F.2d 497, 502 (10th Cir. 1979) ("The 42 U.S.C. § 1986 claim is dependent on the existence of a cause of action under [S]ection 1985, and therefore fails

also."). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." <u>Medina v. City & County of Denver</u>, 960 F.2d 1493, 1498 (10th Cir. 1992).

  1.  **<u>Plaintiff's Fourth Amendment Claims</u>**

   The central constitutional right at issue in this case is the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. When, as here, a defense of qualified immunity is raised in the context of the Fourth Amendment, the Court applies two distinct standards of reasonableness. First, in determining whether a defendant's actions violated a specific right, the Court must decide whether the defendant conducted a search or seizure that was "unreasonable" under the Fourth Amendment. Second, if such a violation is found, then in determining whether the constitutional right at issue was clearly established at the time of the search or seizure, the Court must answer the additional question of whether the contours of the right were "sufficiently clear that a reasonable official would understand that what he [did] violate[d] that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987); <u>accord</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 203-204 (2001).

   The subjective motivations of the officer performing the search or seizure are not relevant to determining whether the search or seizure is "reasonable" under the Fourth Amendment. <u>See</u> <u>Arkansas v. Sullivan</u>, 532 U.S. 769, 771-72 (2001). Claims of selective prosecution based on presumptively impermissible factors such as race generally do not

implicate the Fourth Amendment, but instead require some other constitutional basis, such as the Fourteenth Amendment's Equal Protection Clause. <u>See</u> <u>Whren v. United States</u>, 517 U.S. 806, 813 (1996). Accordingly, Plaintiff's claims that she was singled out for mistreatment because of her race are addressed separately from her Fourth Amendment claims.

Plaintiff's primary Fourth Amendment claim in this case concerns the search of her trailer home on the day after the shooting occurred. "'[S]earches and seizures inside a home without a warrant are presumptively unreasonable'" under the Fourth Amendment. <u>United States v. Cuaron</u>, 700 F. 2d 582, 586 (10th Cir. 1983) (quoting <u>Payton v. New York</u>, 445 U.S. 573, 586 (1980)). "Nevertheless, a warrantless entry for some limited purposes is permissible if police officers have probable cause to search the residence and exigent circumstances are present." <u>Id.</u> "The notion that emergency circumstances may in appropriate cases make a warrantless search constitutional if probable cause exists is a clearly established exception to the warrant requirement." <u>United States v. Aquino</u>, 836 F.2d 1268, 1270-71 (10th Cir. 1988).

In this case, the APD officers who searched Plaintiff's trailer home on or about June 19, 1997, claim to have been acting pursuant to a search warrant. (McGrath Dep. at 159, 232.) The search warrant, however, is not part of the record, and Plaintiff has submitted an affidavit in which it is asserted that the warrant in question could not be found in the records of the Second Judicial District Court or the Office of the Second Judicial District Attorney. (Ex. 18 to Pl.'s Resp.) Viewing the evidence in the light most favorable to the nonmovant,

see Hunt, 526 U.S. at 551-52, the Court presumes for purposes of analyzing Defendant's

summary-judgment motion that a search warrant had not been obtained prior to the search

of Plaintiff's trailer on or about June 19, 1997.

Nevertheless, the search was not unreasonable under the Fourth Amendment because

it was supported by probable cause and exigent circumstances. In this context, "[p]robable

cause means that 'there is a fair probability that contraband or evidence of a crime will be

found in a particular place.'" United States v. Tisdale, 248 F.3d 964, 970 (10th Cir. 2001)

(quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). The probable-cause standard does

"'not require the same type of specific evidence of each element of the offense as would be

needed to support a conviction.'" United States v. Pollack, 895 F.2d 686, 691 (10th Cir.

1990) (quoting Adams v. Williams, 407 U.S. 143, 148-49 (1972)). Thus, an officer in search

of evidence of a crime ordinarily is not required to prove every element of the crime at issue

in order to establish the probable cause necessary to justify the search.

The veracity of crime victims, or crime-scene bystanders, ordinarily is assumed in

making probable-cause determinations. See United States v. Blount, 123 F.3d 831, 835 (5th

Cir. 1997) (en banc). Nevertheless, police officers "may weigh the credibility of witnesses"

and are not required to believe one witness's testimony over that of another in making such

a determination. Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1259 (10th Cir. 1998).

In this case, the APD officers saw that Mr. Ledezma was bleeding from a gunshot

wound in the vicinity of Plaintiff's trailer and obtained statements from several witnesses

indicating that Plaintiff's family members had brandished a handgun during the fight with

Mr. Ledezma. Further, the APD officers had arrested Carlos Diaz approximately one minute after he left the trailer home on June 19, 1997, and they had just obtained a statement from him indicating that the handgun was hidden in the trailer home. Thus, under the totality of the circumstances, the APD officers had probable cause to believe that the handgun used in the shooting was located in Plaintiff's trailer home and that the handgun was evidence of a crime, namely the aggravated battery of Mr. Ledezma. See Tisdale, 248 F.3d at 970-71; cf. Diaz v. Albuquerque, N.M. Police Dep't, Civ. No. 00-862 JP/WWD, slip. op. at 5 (D.N.M. July 18, 2002) (concluding that APD officers had probable cause to arrest Gilbert Diaz); Diaz v. Second Jud. Dist. Ct., Civ. No. 00-577 JC/RLP, slip. op. at 6 (D.N.M. Aug. 27, 2002) (concluding that APD officers had probable cause to arrest Carlos Diaz and Myrna Diaz).

Further, the circumstances were sufficiently exigent to justify a warrantless search. Exigent circumstances include "'hot pursuit of a fleeing felon, or imminent destruction of evidence, or the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling.'" United States v. Wicks, 995 F. 2d 964, 970 (10th Cir. 1993) (quoting Minnesota v. Olson, 495 U.S. 91, 100 (1990) (citations omitted)). There is no bright-line test for determining the presence of exigent circumstances, however, "'because such a determination ultimately depends on the unique facts of each controversy.'" United States v. Justice, 835 F.2d 1310, 1312 (10th Cir. 1987) (quoting United States v. Jones, 635 F.2d 1357, 1361 (8th Cir. 1980)).

In this case, the crime at issue involved a gunshot wound to the victim's head resulting from a fight among several people, only some of whom were in police custody at the time of the search. Such a crime is sufficiently grave to qualify for the exigent-circumstances exception to the warrant requirement. See Aquino, 836 F.2d at 1271-72. In addition, the individual who claimed to have hidden the gun in the trailer home had just left that location when he was arrested. Under these circumstances, it was reasonable to infer that other individuals beyond police control, including members of both the Diaz family and the Ledezma family, were in a position to retrieve the handgun either for the purpose of destroying evidence of the crime for which Carlos Diaz was arrested or for the purpose of engaging in violent retaliatory action against the other family. Cf. id. at 1273 (concluding that exigent circumstances were present where the release of some individuals at the scene created the possibility that news of arrests would reach others involved in illegal drug transactions and cause them to destroy evidence).

Even if these circumstances were not sufficiently exigent to justify a warrantless search of Plaintiff's trailer home, the individual Defendants are entitled to qualified immunity because the contours of the right were not "sufficiently clear that a reasonable official would understand that what he [did] violate[d] that right." Anderson, 483 U.S. at 640 (1987); accord Saucier, 533 U.S. at 203-204. Due to the minimal Supreme Court precedent on the issue, the Tenth Circuit has concluded that the contours of what constitutes a sufficient emergency to invoke the exigent-circumstances exception "remain unclear,"

Aquino, 836 F.2d at 1271, and that "there is no absolute test for the presence of exigent circumstances." Wicks, 995 F.2d at 970 (internal quotation marks omitted).

In addition to the exigencies associated with the failure to locate or secure the handgun used in the shooting, the APD officers possessed a consent-to-search form that had been signed the previous day, and they found the trailer home to be unoccupied when they entered to perform the search. Under the particular circumstances of this case, the officers are entitled to qualified immunity because they could reasonably but mistakenly have concluded that they could proceed with the search without violating the Fourth Amendment.

Plaintiff also objects to the manner in which the search was executed, arguing that the APD officers were unjustified in "ransacking" her trailer home. (Pl. Resp. at 2, 5.) The only evidence Plaintiff has submitted to support this objection is the deposition testimony of Gilbert Diaz, who was released from police custody and allowed to return to Plaintiff's trailer home immediately following the search. According to Gilbert Diaz, Plaintiff's trailer home "was broken into" and "[p]retty well raided" at that time. He also stated that "[t]hey sure went through the whole house," and that "[t]hings were turned up, et cetera, et cetera." (Gilbert Diaz Dep. at 91, 94.)

This testimony is insufficient to establish that the APD officers' execution of the search for the handgun used in the shooting was unreasonable. "Although the Constitution does not specifically address how an officer should execute a search warrant, a warrant that is reasonably executed will withstand constitutional scrutiny." Lawmaster v. Ward, 125 F.3d 1341, 1349 (10th Cir. 1997). "[S]o long as the officer's conduct remains within the

boundaries of reasonableness, an officer has discretion over the details of how best to proceed with a search warrant's execution. Occasionally, such details include damaging property, detaining residents, or taking action necessary to protect the searching officers." Id. (citations omitted.) In this case, it was within the officers' reasonable exercise of discretion to break into the unoccupied trailer home, go through the whole house, and turn things up in order to search for the handgun used in the shooting.

Finally, Plaintiff asserts that the APD officers would not allow her to use her telephone or other means to request medical assistance while they were questioning her and her family about the whereabouts of Carlos Diaz on the evening of the shooting. The Court construes this assertion as a claim that she was subject to an unreasonable seizure of her person during that time.

The individual Defendants are entitled to qualified immunity regarding this claim. In general, officers "may lawfully go to a person's home to interview him." United States v. Daoust, 916 F.2d 757, 758 (1st Cir. 1990); see 1 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment §2.3(b), at 475 (3d ed. 1996) ("It is not improper for a police officer to call at a particular house and seek admission for the purpose of investigating a complaint or conducting other official business."). To the extent that the interview at Plaintiff's trailer home became an investigative detention, denying Plaintiff's request to use the telephone or otherwise summon medical assistance during that brief period did not exceed the permissible scope of such a detention, given the absence of any visible injury to Plaintiff, the recency of the shooting, and the fact that neither the handgun nor the

individual who fired it had been apprehended at that point.  Cf. United States v. Perdue, 8 F.3d 1455, 1463 (10th Cir. 1993) (concluding that it was not unreasonable under the circumstances for officers to execute an investigatory stop by drawing their weapons and ordering the defendant out of his car and onto the ground); Gallegos v. City of Colorado Springs, 114 F.3d 1024, 1030-31 (10th Cir. 1997) (concluding that it was not unreasonable under the circumstances for an officer to execute an investigatory stop by grabbing a suspect by the arm and placing him face down on the pavement).  To the extent that the security measures employed by the APD officers at the time Plaintiff claimed to have requested medical assistance exceeded the proper scope of an investigative stop, such an error was a reasonable mistake in light of the safety concerns discussed above and the "sometimes 'hazy border between excessive and acceptable force.'"  Saucier, 533 U.S. at 206.

"The concern of the [qualified] immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct."  Id. at 205. This concern weighs in favor of granting qualified immunity to the individual Defendants on all of Plaintiff's Fourth Amendment claims.

2.      **Plaintiff's Fifth, Thirteenth, and Fourteenth Amendment Claims**

The individual Defendants also are entitled to qualified immunity with respect to Plaintiff's claims that they engaged in racial profiling and refused to provide her with medical assistance or police protection.  The Court construes Plaintiff's allegations of racial-profiling as a claim of selective prosecution in violation of the equal protection guarantees

of the Thirteenth and Fourteenth Amendments. The essential elements of a selective prosecution claim include both discriminatory effect and discriminatory intent. See United States v. James, 257 F.3d 1173, 1178 (10th Cir. 2001); Poole v. County of Otero, 271 F.3d 955, 958 (10th Cir. 2001). "To prove discriminatory effect in a race-based selective prosecution claim, a defendant must make a credible showing that a similarly-situated individual of another race could have been prosecuted for the offense for which the defendant was charged, but was not." James, 257 F.3d at 1179; accord Poole, 271 F.3d at 958. As to discriminatory intent, "'the defendant must prove that the government's selection of him for prosecution was invidious or in bad faith and was based on impermissible considerations such as'" race. Poole, 271 F.3d at 958-59 (quoting United States v. Furman, 31 F.3d 1034, 1037 (10th Cir. 1994)).

In this instance, Plaintiff has made no showing that the essential elements of a selective prosecution claim have been satisfied. In particular, Plaintiff has not provided any information concerning the number of "black Cuban-American" individuals the APD officers have detained and searched, or the number of non-black, non-Cuban-American suspects the officers could have lawfully detained and searched, but did not. Thus, the Court concludes that Plaintiff has not stated a viable selective prosecution claim under the Fourteenth Amendment. See Poole, 271 F.3d at 959; James, 257 F.3d at 1181; cf. Diaz v. Second Jud. Dist. Ct., Civ. No. 00-577 JC/RLP, slip. op. at 7-8 (D.N.M. Aug. 27, 2001) (concluding that APD officers were entitled to summary judgment on similar equal-protection claims brought by Carlos Diaz and Myrna Diaz).

The Court construes Plaintiff's allegations regarding refusal of medical assistance and police protection as a substantive due-process claim under the Fifth and Fourteenth Amendments. While "the Due Process Clause 'generally confer[s] no affirmative right to governmental aid,'" <u>Currier v. Doran</u>, 242 F.3d 905, 917 (10th Cir. 2001) (quoting <u>DeShaney v. Winnebago County Dep't of Soc. Servs.</u>, 489 U.S. 189, 196 (1989)), prison officials and municipalities are "responsible for taking reasonable measures to insure the safety of inmates" and pretrial detainees under certain circumstances. <u>Lopez v. LeMaster</u>, 172 F.3d 756, 759 (10th Cir. 1999) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-33 (1994)).

The only time when Plaintiff arguably was under any form of detention was during the initial investigation at her trailer that immediately followed the shooting. Given that Plaintiff displayed no visible signs of injury at that point (Clara Diaz Dep. at 25-26), the Court concludes that the APD officers acted reasonably in giving priority to locating the shooter and providing for the medical needs of the shooting victim. The individual Defendants are entitled to qualified immunity regarding this claim.

Plaintiff also contends that she was denied police protection in the days following the shooting. At her deposition, however, she testified that her calls for assistance during that period were made to an organization called "Crimestoppers," which is not a party to this case (Clara Diaz Dep. at 35-38.) In addition, Plaintiff has not made any showing in support of each element of a "danger creation" cause of action against the individual Defendants. <u>See Currier</u>, 242 F.3d at 918. Therefore, Plaintiff's contentions are insufficient to defeat Defendants' summary-judgment motion.

### 3.    Plaintiff's Conspiracy Claims

Plaintiff's Memorandum in Support of Response to Defendant's Motion for Summary Judgment on Qualified Immunity provides no evidence or authority to defeat qualified immunity with respect to a conspiracy to violate civil rights under Sections 1985 or 1986. Instead, Plaintiff claims that qualified immunity is inappropriate in this case simply because she alleges "malicious intent of the Defendants in acts of racial discrimination." (Pl.'s Resp. at 2.)

Plaintiff's argument is without merit. While conspiracy claims under 42 U.S.C. § 1985 may require a showing of class-based or racially discriminatory animus, see Bisbee, 39 F.3d at 1102, this requirement does not exempt such claims from the defense of qualified immunity, see id. at 1101-02. Hence, the fact that Plaintiff asserts a claim involving racial discrimination does not relieve her of the burden of presenting evidence necessary to defeat Defendant's motion for summary judgment. Plaintiff has failed to meet this burden. Thus, the individual Defendants are entitled to qualified immunity with respect to Plaintiff's conspiracy claims under Sections 1985 and 1986. Cf. Diaz v. Albuquerque, N.M. Police Dep't, Civ. No. 00-862 JP/WWD, slip. op. at 9-10 (D.N.M. July 18, 2002) (citing Imperial v. Suburban Hosp. Ass'n, Inc., 37 F.3d 1026, 1031 (4th Cir. 1994)); Diaz v. Second Jud. Dist. Ct., Civ. No. 00-577 JC/RLP, slip. op. at 9 (D.N.M. Aug. 27, 2002) (same).

## C.    **Municipal Liability**

Plaintiff's Complaint names the Albuquerque, New Mexico Police Department as a Defendant. "[T]he New Mexico District Court has consistently held that a police department is not a legal entity which may be held liable apart from a municipal corporation." <u>Diaz v. Second Jud. Dist. Ct.</u>, Civ. No. 00-700 JC/DJS, slip. op. at 8-9 (D.N.M. Aug. 1, 2001) (memorandum opinion and order granting motions to dismiss). Thus, Plaintiff's claims against the "Albuquerque, New Mexico Police Department" are not viable.

While this technical defect might be cured by an amendment to Plaintiff's Complaint, such an amendment would be futile because governmental entities and government officials in their official capacity are subject to suit under Section 1983 only if the challenged actions were taken pursuant to an established institutional policy or custom or by an official with final policy-making authority, <u>see</u> <u>Murrell v. Sch. Dist. No. 1</u>, 186 F.3d 1238, 1249-51 (10th Cir. 1999), and the remaining allegations in Plaintiff's Complaint are wholly insufficient to state such a claim. <u>See</u> <u>Jenkins v. Wood</u>, 81 F.3d 988, 994-96 (10th Cir. 1996). In addition, the affirmative defenses listed in Defendants' answers to Plaintiffs' Complaint assert that Plaintiff's Complaint fails to state a claim upon which relief can be granted, and counsel for Plaintiff and her family members was advised of similar pleading defects in other related cases cited above. For these reasons, *sua sponte* dismissal of Plaintiff's civil-rights claims against "the Albuquerque, New Mexico Police Department" is appropriate. <u>See</u> <u>Curley</u>, 246 F.3d at 1284; <u>Hall</u>, 935 F.2d at 1109-10.

### D.     **Plaintiff's Other Claims**

The same rationale applies to Plaintiff's remaining claims under the civil RICO statute, see 18 U.S.C. § 1964(c), three criminal statutes, see 18 U.S.C. §§ 241, 242, and 1505 (2000), and the tort of intentional infliction of emotional distress. None of these claims is viable for the following reasons.

18 U.S.C. §§ 241, 242, and 1505 are criminal statutes. They do not provide Plaintiff with any private right of action. See Diaz v. Second Jud. Dist. Ct., Civ. No. 00-577 JC/RLP (D.N.M. Dec. 7, 2000) (citing Powers v. Karen, 768 F. Supp. 46, 51 (E.D.N.Y. 1991), aff'd 963 F.2d 1522 (2d Cir. 1992)). In addition, Plaintiff's conclusory allegations are wholly inadequate to establish standing under the civil RICO statute. See Diaz v. Second Jud. Dist. Ct., Civ. No.00-700 JC/DJS, slip. op. at 4-7 (D.N.M. Aug. 1, 2001); Diaz v. Ledezma, Civ. No. 00-801 MCA/RLP, slip. op. at 5-11 (D.N.M. Aug. 28, 2002). Finally, while the Court understands that Plaintiff may have been treated in a brusque manner by the APD officers who responded to the shooting outside her trailer home, the allegations in Plaintiff's Complaint do not rise to the level of extreme and outrageous conduct required to support a claim for intentional infliction of emotional distress. See Jaynes v. Strong-Thorne Mortuary, Inc., 1998-NMSC-004, ¶¶ 18-20, 124 N.M. 613, 954 P.2d 45; N.M. Unif. Jury Instr. 13-1628.

## III.     **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is granted, and all of Plaintiff's claims are dismissed with prejudice.

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that all of Plaintiff's claims in this action are **DISMISSED WITH PREJUDICE**.

**SO ORDERED**, this 29th day of August, 2002, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge